BEFORE THE SECOND DIVISION, SEPTEMBER 25, 1952

**No. 56872.**—Hal Delphin Co. and J. J. Gavin & Co., Inc. v. United States, protest 157547-K (New York).

FORD, Judge: The suit listed above was filed by the plaintiffs seeking to recover a certain sum of money alleged to have been illegally exacted as customs duties upon an importation of mica. The collector classified said merchandise as mica, cut or stamped to dimensions, shape, or form, and levied duty thereon at the rate of 40 percent ad valorem under paragraph 208 (b) of the Tariff Act of 1930.

Plaintiffs claim said merchandise to be "properly dutiable at 12½% or 20% or 22½% or 25% under Paragraph 208 as modified or amended." For convenient reference, the pertinent portions of said paragraph 208, as originally enacted and as modified, are copied below.

PAR. 208. (b)   Mica, cut or stamped to dimensions, shape, or form, 40 per centum ad valorem.

PAR. 208. (c) and (d)   [as modified by the General Agreement on Tariffs and Trade, 82 Treas. Dec. 305, T. D. 51802, and supplemented by Presidential proclamation, T. D. 51954]:

(c)   Mica films and splittings, not cut or stamped to dimensions:
Not above twelve ten-thousandths of one inch in thickness, 12½% ad val.
Over twelve ten-thousandths of one inch in thickness, 20% ad val.

(d)   Mica films and splittings cut or stamped to dimensions, 22½% ad val.

PAR. 208. (e)   [as modified by T. D. 51802]:

(e)   Mica plates and built-up mica, and all manufactures of mica, or of which mica is the component material of chief value, by whatever name known, and to whatever use applied, and whether or not named, described, or provided for in any paragraph of the Tariff Act of 1930 other than paragraph 208, 25% ad val.

At the trial of this case, counsel for the plaintiffs called one witness. The defendant called no witnesses. Plaintiffs' witness testified in substance that she was a partner in the Hal Delphin Co., associated with this firm since 1943; that she had had 15 years' experience in the mica field. Through this witness, a sample of the involved merchandise was admitted in evidence and marked collective exhibit 1. The witness then testified that she placed the order for this merchandise; that it was ordered as 1¹⁄₁₆ inches ruby mica disks of random thickness; that the merchandise was sold under the same description; that the merchandise was never bought or sold under any other name, so far as she knew; that she had seen the machines which make or manufacture the mica into the shape represented by collective exhibit 1.

The witness described the machine upon which collective exhibit 1 is produced as follows:

It is what we call a foot press as it goes to the rural areas in India, there is no electricity there and there is a hollow in the center where the dies are placed and the mica is placed on it and it is stamped according to that die, the one and one-sixteenth inch die.

The witness further testified that she had had occasion to see what use has been made of merchandise like collective exhibit 1, because she has been selling this mica for about 8 years and has visited her customers' plants periodically, at least

four times each year; that they usually took her right through their shops, and she had an opportunity to see their operations; that the only use she has seen the involved merchandise put to is in fuses, used as windows; that in so using the merchandise, as a rule it is split further "because they are random thicknesses when they were imported and the users split them down to their own particular specifications"; that the users do not have to reduce the circumference or diameter of the disks; that the measurement of the disks is the measurement needed for that particular type of use; and that she has never known of collective exhibit 1 being put to any other use.

On cross-examination, the witness reaffirmed her previous testimony that the involved merchandise, consisting of disks, was punched to its present dimensions, shape, or form, and stated that these disks were not cut or stamped to their present dimensions, shape, or form. When asked by the court what she would consider the difference between stamping and punching, the witness was not able to give a clear distinction, and admitted "I don't know what the difference is between the two of them." The witness further testified that where these disks are ordered in random thicknesses, the manufacturers, before putting them to their use, split them down to the thickness they require.

Upon the above record, counsel for the plaintiffs contends that this case is on all fours with the case of *Eugene Munsell & Co.* v. *United States*, 49 Treas. Dec. 809, T. D. 41563, G. A. 9126, and is controlled thereby, because both cases involved mica disks of random thicknesses which were made in the same manner and were used in the same manner. Counsel for the defendant, however, contends that:

The evidence establishes that the involved merchandise consists of mica which has been stamped to dimensions, form, or shape, hence the collector's classification and assessment of duty was proper.

In support of its contention, counsel for the defendant relies upon the case of *United States* v. *Wm. Brand & Co.*, 30 C. C. P. A. (Customs) 39, C. A. D. 211. It should be noted, however, that the merchandise in the *Brand* case, *supra*, was classified as mica films and splittings cut or stamped to dimensions, whereas in the present case the merchandise was classified as mica, cut or stamped to dimensions, shape, or form. The provision in paragraph 208 (d) for mica films and splittings cut or stamped to dimensions, involved in the *Brand* case, *supra*, is an *eo nomine* designation for a particular kind or class of manufactured mica. The provision involved in the present case for mica, cut or stamped to dimensions, shape, or form, would likewise appear to be an *eo nomine* designation for a particular kind or class of manufactured mica.

In the *Brand* case, *supra*, the Court of Customs and Patent Appeals said:

An examination of the exhibits of the imported merchandise convinces us they are of such thinness and transparency that they are properly to be held films or splittings of mica. This is not controverted by appellee. These films or splittings are cut to ordered dimensions. Therefore they are accurately described in subdivision (d) of the said paragraph.

The sole theory, upon which appellee based its contention that the merchandise is properly dutiable as a manufacture of mica, is its dedication to a single use.

* * * In the instant case there is no room for construction of subdivision (d) of paragraph 208, which provides for mica films and splittings cut to dimensions. It does not matter to what use such films may be put. The question of use is not material here.

If the provisions of subdivision (d) were not in said paragraph 208, the instant merchandise might be classifiable as a manufacture of mica under subdivision (e). Assuming that the mica films herein are manufactures of mica, nevertheless as the paragraph is written they are not properly classifiable under subdivision (e) because of subdivision (d). Subdivision (d) provides *eo nomine* for the imported merchandise and therefore the classification made by the collector was proper.

If the imported merchandise does not come within the purview of subdivision (d), in our opinion no merchandise could be held dutiable thereunder. The intent of the Congress to assess for duty under subdivision (d) of paragraph 208 mica films and splittings, such as the imported merchandise, is too clear to require further discussion.

The plaintiffs rely upon the case of *Munsell* v. *United States*, 49 Treas. Dec. 809, T. D. 41563, G. A. 9126, as support for their position. In that case, this court held as follows:

From the record we are satisfied that these disks have but one specific use, to wit, for fuse plugs, and that they are ready for such use as imported, some manufacturers using thin and others thick disks, but all for the one purpose. They are, therefore, in our opinion, not to be regarded merely as cut mica, which would clearly indicate mica, as material, but rather as an article composed of mica and dedicated to a definite and exclusive use as part of another article, to wit, as part of an electric fuse. Surely, if there were a specific provision for such fuses and parts thereof, it would embrace these disks, just as the provision in paragraph 1444 for parts of phonographs was held to include mica disks which were used exclusively on phonographs. See G. A. 8929 (T. D. 40649). Those phonograph disks were described by the appraiser as—

\* \* \* circular pieces of mica made from carefully selected clear uncut mica split to the required thickness and turned in a lathe to circular form and edges polished.
They are then inspected and any defective pieces discarded and are afterwards put under a drill and a hole made in the center, after which they are again inspected and defective pieces discarded.

The importers stress the fact that because some of the present disks may have to be split in order that certain manufacturers may use them, their classification as manufactures of mica is thereby nullified. We do not concur in that view of the law. We think the controlling and determinative fact is that these disks in their imported condition are concededly used for one single purpose, and that many of them are capable of such use as imported without the slightest adjustment or fitting or any work whatsoever being applied to them; that they were stamped into circles for electric fuses and for no other purpose, and that that exclusive use removes them from the class of material, cut mica, which, we gather from the testimony, comprises mica in various stock sizes which may be made adaptable to different uses, but which are not shown to belong to any specific article exclusively.

It is our opinion, however, that the *Munsell* case, *supra*, cannot be accepted as supporting the proposition contended for by the plaintiffs herein in view of the decision of the Court of Customs and Patent Appeals in the *Brand* case, *supra*. The decision in the *Brand* case, *supra*, is so sweeping in its pronouncements as to leave no room for argument regarding the proper classification of the instant merchandise. When the pronouncements made in the *Brand* case, *supra*, are applied to the facts in this case, their controlling effect is readily apparent.

Upon the facts in this case, and following the *Brand* case, *supra*, we overrule all the claims of the plaintiffs. Judgment will be rendered accordingly.